IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GAIL L. WOLL,

        Plaintiff,               No. CIV S-01-0380 GGH

        vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,
                                             ORDER

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is granted, the Commissioner's Cross Motion for Summary Judgment is denied, and the Clerk is directed to enter judgment for the plaintiff. This case is remanded for further findings pursuant to sentence four of 42 U.S.C. §405(g).

        On November 22, 2004, this court issued an order to show cause why the case should not be dismissed for failure to prosecute because plaintiff did not file a summary judgment motion by September 2, 2004, as required by the scheduling order. On December 14, 2004, plaintiff filed a response and motion for summary judgment through counsel, indicating

that she was not previously represented by counsel and was unable to retain counsel until this time. The court finds that plaintiff's response is satisfactory. The show cause order will therefore be discharged.

BACKGROUND

Plaintiff, born February 20, 1958, applied for disability benefits with a protective filing date of March 28, 1997. (Tr. at 169, 13.) Plaintiff alleged she was unable to work since November 20, 1996, due to back problems. (Tr. at 170.) In a decision dated October 14, 1999, ALJ L. Kalei Fong determined that plaintiff was not disabled. (Tr. at 135-41.) Plaintiff then filed this action on February 5, 2001. On November 6, 2001, after the Commissioner represented that the claim file could not be located, this court remanded the matter under sentence six to locate or reconstruct the file. In a second decision dated June 7, 2002, ALJ Plauche F. Villere, Jr., determined that plaintiff was not disabled.[1] The ALJ made the following findings:

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

>   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§404.1527 and 416.927).

7. The claimant retains the residual functional capacity for the full range of sedentary work, reduced by manipulative limitations that preclude more than occasional overhead reaching and postural limitations that preclude more than occasional climbing, crawling, crouching, kneeling or stooping.

8. The claimant is able to perform the requirements of her past relevant work as a title clerk both as generally performed in the national economy and as actually performed (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

11. The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

12. The claimant retains the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

13. Based on Social Security Rulings 83-10, 83-14 and 85-15, and the claimant's age, education, work experience, and residual functional capacity described above, she is able to make a successful adjustment to work that exists in significant numbers in the national economy, a finding of disabled is therefore reached within the framework of Medical-Vocational Rule 201.28, Appendix 2, Subpart P, Regulations No. 4.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(e) and (f) and 416.920(e) and (f)).

(Tr. at 20-21.)

ISSUES PRESENTED

Plaintiff has raised the following issue: Whether the ALJ Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual Functional Capacity.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

<u>Whether the ALJ Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual Functional Capacity</u>

Plaintiff contends that the ALJ should have utilized a vocational expert because Dr. Howland stated that squatting was precluded, and because plaintiff was found to need frequent breaks by Dr. Havton.

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[2] <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. <u>Desrosiers</u>, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. <u>Desrosiers</u> 846

---

[2] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; <u>Cooper</u>, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993).

F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78. The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

In this case, the ALJ concluded that plaintiff was not disabled at step four of the analysis, and that she could do her past work as a title clerk. He went on, however, to make an additional finding that "even if [she] was not able to perform her past relevant work," she could do a significant range of sedentary work based on her transferable skills, according to the grids. (Tr. at 18-19.)

Plaintiff takes issue with the ALJ's finding that plaintiff could occasionally crouch in light of Dr. Howland's opinion that plaintiff was precluded from squatting.[3] (Tr. at 16.) Most sedentary and light jobs require no crouching and only occasional (very little up to one third of the time) stooping. SSR 83-14. See also SSR 85-15, *7 (ability to occasionally stoop or crouch leaves the sedentary and light occupational base virtually intact); 96-9p, *7 (crouching and other postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work"). Only if the occupational base is significantly eroded, such as where a plaintiff is completely unable to perform a nonexertional activity such as crouching, would a vocational consultant be necessary. Iannopollo v. Barnhart, 280 F. Supp.2d 41, 50 (W.D. N.Y. 2003).

The ALJ chose to rely not on the treating physician opinion of Dr. Howland that plaintiff could do no crouching, but on Dr. Havton's consulting opinion that plaintiff could occasionally crouch. (Tr. at 267.) Yet the ALJ decided to ignore Dr. Havton's opinion that plaintiff required frequent breaks every thirty to forty minutes, and did not reject Dr. Howland's

---

[3] Both parties appear to have the understanding that squatting is most similar to the term "crouching" as used in the rulings. SSR 83-14 (defining crouching as "bending the body downward and forward by bending both the legs and spine").

6

opinion but rather relied on parts of it. The ALJ accorded "substantial weight" to both Drs. Howland's and Havton's opinions. (Tr. at 17.) The ALJ, however, gave no reason for discrediting the crouching preclusion imposed by Dr. Howland, or the frequent breaks limit imposed by Dr. Havton.

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). It was error to reject the contradicted opinion of treating physician Dr. Howland without explanation. Additionally, "[a]n ALJ is not entitled to pick and choose through a physician's opinion." Sklenar v. Barnhart, 195 F.Supp.2d 696, 703 n.6 (W.D.Pa. 2002) (citations and quotation omitted). In accepting part of Dr. Howland's opinion and rejecting without explanation another part, the ALJ violated the rule against selective acceptance of medical opinions. The ALJ erred by relying on only portions of both physicians' Howland's and Havton's opinions without satisfactory explanation for disregarding other portions. Furthermore, the opinion of Dr. Howland relies on more recent objective clinical findings such as the CT scan done on July 11, 2000, in which there was "bulging and spurring noted at the L5-S1 level causing some encroachment on the anterior aspect of the thecal sac. Mild posterior bulging is noted at the L4-5 space as well." (Tr. at 280.) His opinion, therefore, is supported by substantial evidence.

Turning to the crouching restriction as set forth by Dr. Howland, although nonexertional in nature, (20 CFR § 416.969a(c)(vi), SSR 96-9p, *5) it does not require consultation with a vocational expert rather than reliance on the grids if it does not significantly

limit plaintiff's ability to do sedentary work. "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993). Only if a nonexertional limitation significantly limits plaintiff's ability to work in a certain category must the ALJ use a vocational expert. Aukland v. Massanari, 251 F. 3d. 1033 (9th Cir. 2001). Because plaintiff's crouching restriction would have a significant impact on her ability to do sedentary work, reliance on the grids was improper, and the ALJ should have consulted a vocational expert to evaluate the impact of plaintiff's limitations on his ability to work.

Because the court finds that substantial evidence supports the opinion of Dr. Howland, there is no need to address plaintiff 's claim that she needs frequent breaks every thirty to forty minutes, as set forth by Dr. Havton.

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal. 1996). To avoid the possibility of an inequitable result, this case should be remanded to enable the ALJ to obtain vocational testimony regarding plaintiff's restriction from crouching on her ability to do sedentary work, and whether there is any other work she can do.

CONCLUSION

Accordingly, the order to show cause, filed November 22, 2004, is DISCHARGED. The court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for Summary Judgment or Remand is granted, the Commissioner's Cross Motion for Summary

\\\\\

8

Judgment is denied, and the Clerk is directed to enter judgment for the plaintiff.   This case is remanded for further findings pursuant to sentence four of 42 U.S.C. § 405(g).

DATED: 5/31/05                                      /s/ Gregory G. Hollows

                                                              GREGORY G. HOLLOWS
                                                              U.S. MAGISTRATE JUDGE

GGH/076
Woll380.ss.wpd